UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DELAWARE ART MUSEUM, | § | |
| A Delaware corporation, | § | |
| | § | |
| Plaintiff, | § | C.A. No.: 06-481 |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| ANN BEHA ARCHITECTS INC., f/k/a | § | |
| ANN BEHA ASSOCIATES, INC., a | § | |
| Massachusetts corporation, and OVE ARUP & | § | |
| PARTNERS MASSACHUSETTS, INC., | § | |
| A Massachusetts corporation, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT OVE ARUP & PARTNERS MASSACHUSETTS, INC.'S**
**REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO**
**DISMISS THE COMPLAINT PURSUANT TO FED. R.. CIV. P. 12(b)**

Respectfully submitted,

LAW OFFICES OF JAMES F. BAILEY

/s/ James F. Bailey, Jr.
JAMES F. BAILEY, JR.
Delaware Bar I.D. #336
Three Mill Road, Suite 306A
Wilmington, DE 19806
(302) 658-5686
*Attorney for Defendant*
*Ove Arup & Partners Massachusetts, Inc.*

Michael J. Vardaro, Esquire
Zetlin & DeChiara LLP
900 Merchants Concourse
Westbury NY 11590
(516) 832-1000

Dated: November 17, 2006

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ………………………………………………………… ii

PRELIMINARY STATEMENT…………………………………………………… 1

ARGUMENT …………………………………………………………………………… 2

POINT I.    DAM'S ARGUMENT THAT THE LAW OF FOREIGN
JURISDICTIONS AND OF PUBLIC POLICY COMPELS THIS
COURT TO OVERRULE DELAWARE'S COURTS AND
LEGISLATURE IS INSUFFICIENT TO OVERCOME ARUP'S
MOTION TO DISMISS……………………………………………… 2

POINT II.    DAM FAILS TO PROFFER ANY LEGITIMATE REASON
WHY THIS COURT SHOULD NOT FOLLOW DELAWARE
LAW AND DISMISS THE CLAIM AGAINST ARUP ………… 5

CONCLUSION ................................................... 10

## TABLE OF AUTHORITIES

**Cases**

Charles Messina Plumbing & Elec. Co., Inc. v. Smith, 2006 WL 2641591 at *2 (Del.
    Com. Pl. August 26, 2006).............................................................................................. 5

Christiana Marine Service Corporatrion v. Texaco Fuel and Marine Marketing, Inc., 2002
    WL 133560, *7 (Del. Super. Ct. June 13, 2002) ....................................................... 5

Counsel of Dorset Condominium Apartments v. Dorset Apartments, C.A. 90C-10-269, 1992
    Del. Super. LEXIS 343 (Del. Super. Ct. Aug. 26, 1992)……………………………..................5,8

Danforth v. Acorn Architecture Structrures, Inc. 608 A.2d 1194, 1195-98 (Del. 1992) ... 2,3,7

Delmarva Power & Light v. Meter-Treater Inc., 218 F. Supp.2d 564, 568-69 (D.
    Del.2002) ..................................................................................................................... 2

Guardian Const. Co. v. Tetra Tech Richardson, Inc., 583 A.2d 1378 (Del. Super. Ct.
    1990) ……………………………………………………………………………… 6,7,8

Millsboro Fire Company v. Construction Management Service, Inc., 2006 WL
    1867705, (Del. Sup. Ct. June 7, 2006) ……………………………………… 3,5,6,7,8

RLI Insurance Company v. Indian River School District, 2006 WL 1749069 AT *3
    (Del. June 20, 2006).............................................................................................. 3,5,7,8,9

## PRELIMINARY STATEMENT

Defendant Ove Arup & Partners Massachusetts, Inc. ("Arup") respectfully submits this memorandum of law in further support of its motion, pursuant to FED. R. CIV. P. 12(b)(6), to dismiss the Complaint of Plaintiff, the Delaware Art Museum, Inc. ("DAM"), and in reply to DAM's opposition brief dated November 10, 2006. Arup has overwhelmingly demonstrated that Delaware law warrants the dismissal of DAM's single claim of negligent misrepresentation against Arup.

As detailed below, DAM's opposition fails to proffer any legitimate reason why this Court should not follow settled Delaware law and grant Arup's Motion to Dismiss. Specifically, DAM is unable to cast any doubt on the well established Delaware rule of law that where an engineer is hired to perform design services, the engineer cannot be considered a pure information provider and accordingly, no potential liability lies for economic losses. The clarity of this rule of law coupled with the steadfastness of the Delaware courts in adhering to it, apparently leads DAM, in its opposition, to focus its arguments on persuading this court to overrule Delaware case law based on the "great weight of modern authority outside of Delaware" and "public policy considerations." (See Opposition Brief, p. 9). DAM's argument that this Court should ignore the Delaware courts and legislature and rewrite Delaware's economic loss doctrine is unavailing and Arup's motion should be granted in all respects.

1

## Argument

### POINT I

### DAM'S ARGUMENT THAT THE LAW OF FOREIGN JURISDICTIONS AND OF PUBLIC POLICY COMPELS THIS COURT TO OVERRULE DELAWARE'S COURTS AND LEGISLATURE IS INSUFFICIENT TO OVERCOME ARUP'S MOTION TO DISMISS

DAM argues that despite the clear rulings by the Delaware courts holding that design engineers do not fall under the narrow exception to the economic loss doctrine precluding claims, this Court should overrule the Delaware courts and create new law. Apparently, DAM believes that because a handful of other States have relaxed the restrictions imposed by the economic loss doctrine, so too should Delaware. As this Court is aware, Delaware has adopted a fairly strict version of the economic loss doctrine. See Delmarva Power & Light v. Meter-Treater Inc., 218 F. Supp.2d 564, 568-69 (D. Del. 2002) (discussing Danforth v. Acorn Architecture Structures, Inc., 608 A.2d 1194, 1195-98 (Del. 1992)).

In support of its argument, DAM cites cases from other jurisdictions that have no bearing on Delaware law. (See Opposition Brief, p. 17). DAM's argument ignores the well established economic loss doctrine followed by the Delaware courts which precludes recovery under tort law in cases where a plaintiff's only damages are economic in nature and are not the result of a personal injury or damage to property. Moreover, the limited exception to the preclusion of liability under the economic loss doctrine based on Section 552 of the Restatement (Second) of Torts provides that certain

2

negligent misrepresentation claims may be permitted only in those instances where a defendant is considered "a pure information provider." See, RLI Insurance Company v. Indian River School District, 2006 WL 1749069, at *3 (D. Del. June 20, 2006). As more fully discussed in Arup's initial brief, the Delaware courts have resoundingly embraced the economic loss doctrine, especially as it relates to design professionals. See, e.g., Danforth, supra, 608 A.2d at 1198. Considering the unequivocal clarity expressed by the Delaware courts in decisions employing the use of the economic loss doctrine, the application of the economic loss doctrine in other states is simply irrelevant.

DAM also argues that public policy somehow dictates that it should be allowed to sustain its negligent misrepresentation claim against Arup. This argument obviously fails, since this Court cannot be asked to question the policy decisions of the Delaware courts and legislature in this instance. Interestingly, in Millsboro Fire Company v. Construction Management Service, Inc., 2006 WL 1867705 (Del. Sup. Ct. June 7, 2006), the Delaware court considered questions of public policy and explicitly found that such issues did not mandate an expansion of Section 552. Id. at *3. Moreover, the Delaware Supreme Court has also examined the policy considerations surrounding the application of the economic loss rule and commented that it is "best understood by considering the distinct functions served by tort law and contract law." Danforth, 608 A.2d at 1195. Although DAM may not agree with the Delaware Supreme Court's findings that the public policy considerations support the application of the economic loss doctrine, a re-examination is not proper in this case.

3

Interestingly, DAM's own argument in support of its plea for re-examination of the principles behind the economic loss doctrine is plainly incorrect. DAM argues that the economic loss doctrine would render it, and any owner, unable to maintain claims for the work that it alleges Arup, a sub-consultant to the lead architect, was negligent in performing. Of course, this is simply not true, as the trend in the construction industry is for the owner to directly contract with all of the architects and engineers on a project. The direct contractual relationship creates a more appropriate right of recovery under contract law as the Delaware Supreme Court contemplated in Danforth.

4

**POINT II**

**DAM FAILS TO PROFFER ANY LEGITIMATE REASON**
**WHY THIS COURT SHOULD NOT FOLLOW DELAWARE**
**LAW AND DISMISS THE CLAIM AGAINST ARUP**

In its brief in opposition to Arup's motion to dismiss, plaintiff concedes that it may maintain its claim against Arup for negligent misrepresentation only if Arup was in the business of providing information as required by Section 552 of the Restatement (Second) of Torts. Plaintiff also acknowledges that just a few months ago, the Delaware Superior Court held in Millsboro, supra, that architects and engineers who are retained to design buildings are not in the business of providing information and thus cannot be held liable under Section 552. 2006 WL 1867705, at *3. Indeed, Millsboro was one in a line of Delaware cases that have held that a company that provides information incidental to its primary responsibility is not deemed to be in the business of providing information under Delaware law. See RLI, supra, 2006 WL 1749069, at *3 (finding that only a business that is "a pure information provider" can be held liable under Section 552); Christiana Marine Service Corp. v. Texaco Fuel and Marine Marketing, 2002 WL 1335360, at *7 (Del. Super. Ct. June 13, 2002) (finding that defendant that provided information related to its transportation of oil was not in the business of providing information); Charles Messina Plumbing & Elec. Co., Inc. v. Smith, 2006 WL 2641591, at *2 (Del. Com. Pl. August 26, 2006) (finding that company's supply of information was ancillary to its business of installing electrical services); see also Counsel of Dorset Condominium Apartments v. Dorset Apartments, C.A. 90C-10-269, 1992 Del. Super. LEXIS 343 (Del. Super. Ct. Aug. 26, 1992)

5

(contrasting design professionals that simply provide reports with those that actually design and administer the construction of a building).

In its vain attempt to overcome the <u>Millsboro</u> court's sound reasoning in refusing to expand the narrow Section 552 exception, DAM argues that <u>Millsboro</u> is contradicted by "[t]he weight of persuasive and authoritative case law." (Opposition Brief, p. 11). However, DAM fails to cite a single Delaware case that actually supports its position. Instead, DAM points to two Delaware cases, neither of which contradicts <u>Millsboro</u>.

The first, <u>Guardian Const. Co. v. Tetra Tech Richardson, Inc.</u>, 583 A.2d 1378 (Del. Super. Ct. 1990) is precisely the case that the <u>Millsboro</u> court uses to examine the differences between a surveyor and an engineer responsible for design. It is this difference that results in the application of the Section 552 exception to surveyors. The professional in <u>Guardian</u> was held to fit within the narrow exception of Section 552 because its role in the project in question was to purely provide information. Specifically, the defendant's responsibility was limited to surveying the site to determine tidal heights and to provide those measurements to the contractor at a pre-bid meeting. 583 A.2d at 1386-87. As the <u>Guardian</u> court explained:

> the use of the information negligently supplied was not an indirect or collateral consequence · · · <u>it was the end and aim of the transaction</u>. Therefore, the Court concludes, as a matter of law, that the lack of contractual privity between [defendant] and Plaintiffs is not fatal to their negligence claims notwithstanding the fact that Plaintiffs seek purely economic damages in this case.

6

Id. at 1387 (emphasis added).

In fact, the Supreme Court of Delaware explained in Danforth that the Guardian court had recognized "an exception to the economic loss doctrine in the surveyor error context under Restatement (Second) of Torts (1977) §552." 608 A.2d at 1195, n. 1. Unlike Millsboro and the instant matter, the defendant in Guardian merely providing surveying information. That defendant's role was, therefore, much like an accountant or a title searcher, in that it was delivering information concerning facts in existence. Unlike the defendant in Guardian, Arup was not merely surveying the existing museum facility. The Complaint clearly alleges that Arup's role was to design engineering components of renovation and expansion of the existing facility.

The only other case that DAM cites is RLI, supra. In RLI, defendants, a construction manager and architect, were hired in connection with certain mechanical, plumbing and temperature control work at a Delaware high school. 2006 WL 1749069 at *1. With respect to the architect, its contract with the school district called for it to monitor the general contractor and provide reports on the contractor's progress to the school district. Id. The school district's claims against the architect were based on its alleged failure to inform the district regarding the contractor's progress and non-conforming work. Id.

In its analysis of the architect's motion to dismiss, the Court recognized that a defendant may be liable under Section 552 of the Restatement (Second) "only

7

where defendant is a pure information provider." Id. at *3. The Court acknowledged that the defendant that provided surveying services in Guardian fell into this category, but then contrasted that case with Millsboro, where the defendants actually designed the building in question. As RLI expressly acknowledged, there is a clear difference between a professional charged with surveying or reporting information, such as in Guardian, and a professional that provides the service of designing and administering the construction of a building. 2006 WL 1749069, at *3; see also Dorset Condo, supra, 1992 Del. Super. LEXIS 343, at *5-7 (differentiating between engineers who simply conduct surveys or provide similar reports with engineers who actually design the structure in question). Thus, contrary to DAM's claim, neither Guardian nor RLI conflict with Millsboro. Rather, each of these cases actually support Arup's motion to dismiss.

The allegations of the Complaint leave no doubt that Arup was not a pure information provider. In fact, the Complaint fully describes Arup's primary role as the engineer responsible for the design of the renovation and expansion of the Delaware Art Museum. For example, in Paragraph 163(a) of the Complaint, DAM alleges that "Arup did not understand the Museum's requirements, and, therefore, designed a system that did not meet the Museum's needs." Continuing on in Paragraph 163, subsection (b), DAM alleges that the "stairs in the East Court needed to be redesigned because they were flexing – one person walking on the stairs would cause them to vibrate." In Paragraph 163(d), DAM claims that "as designed, mechanical systems were inaccessible to maintenance personnel" and that the solutions "involved relocations that required additional engineering to assure that intended performance was not compromised."

8

Thus, plaintiff's Complaint is explicit in its assertion that Arup's primary responsibility was to design certain engineering components of the project. In Paragraph 173, DAM contends that "late changes in structural design delayed and added to the cost of completion of underpinning, foundations, steel columns and beams, metal decking and placement of slabs." These are just a few of the numerous allegations contained in the 242 paragraph Complaint that conclusively point to Arup's role as something much more than an information provider.

Importantly, DAM expressly acknowledges that Arup was not pure information provider in Paragraph 31 of the Complaint when it explained that "Arup would provide information **and services**" (emphasis added) on the project. Based on DAM's own pleadings, it is clear that Arup was not merely a pure information provider. Thus, unlike in RLI, a more fully developed record is not needed for resolution of this motion. As matter of law, DAM's pleading must be dismissed against Arup since any information that Arup provided on the Project was incidental to its primary responsibility as an engineer charged with the responsibility of designing the renovation and expansion project.

## Conclusion

For the foregoing reasons and those stated in Arup's initial motion papers, Arup respectfully requests that this Court issue an Order dismissing the Complaint in its entirety as against Arup, and for such other and further relief (including costs and disbursements) as this Court deems just and proper.

Dated: November 17, 2006

Respectfully submitted,

BAILEY & ASSOCIATES, P.A.

By: _____
James F. Bailey, Jr., Esq.
3 Mill Road, Suite 306A
Wilmington, Delaware 19806
(302) 658-8051
*Attorneys for Defendant*
*Ove Arup & Partners Massachusetts*

ZETLIN & DE CHIARA LLP
Michael J. Vardaro, Esq.
Chad Sjoquist, Esq.
900 Merchants Concourse
Westbury, New York 11590
(516) 832-1000
*Attorneys for Defendant*
*Ove Arup & Partners Massachusetts*

10

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DELAWARE ART MUSEUM, | § | |
| A Delaware corporation, | § | |
| | § | |
| Plaintiff, | § | C.A. No.: 06-481 |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| ANN BEHA ARCHITECTS INC., f/k/a | § | |
| ANN BEHA ASSOCIATES, INC., a | § | |
| Massachusetts corporation, and OVE ARUP & | § | |
| PARTNERS MASSACHUSETTS, INC., | § | |
| A Massachusetts corporation, | § | |
| | § | |
| Defendants. | § | |

## NOTICE OF SERVICE

I, James F. Bailey, Jr., Esquire, do hereby certify that on this 24th day of October 2006 one copy of the foregoing ***MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION PURSUANT TO FED. R. CIV. P. 12(b) TO DISMISS THE COMPLAINT AGAINST ARUP*** was served on the on the following counsel of record ***Via Electronic Service***:

Thomas Allingham, Esquire
Richard S. Horvath, Esquire
Skadden Arps
One Rodney Square
P.O. Box 636
Wilmington, DE  19899-636

Paul Cottrell, Esquire
Tighe Cottrell & Logan
704 N. King Street, Suite 500
P.O. Box 1031
Wilmington, DE  19899-1031

BAILEY & ASSOCIATES, P.A.

/s/ James F. Bailey, Jr.
JAMES F. BAILEY, JR.
Delaware Bar I.D. #336
Three Mill Road, Suite 306A
Wilmington, DE  19806
(302) 658-5686
*Attorney for Defendant*
*Ove Arup & Partners Massachusetts, Inc.*

COUNCIL OF THE DORSET CONDOMINIUM APARTMENTS, Plaintiff, v. DORSET APARTMENTS, a Delaware general partnership, MORRIS LEWIS STOLTZ, II, JACK P. STOLTZ, KEITH D. STOLTZ, RALPH H. MEYERS, DORSET APARTMENTS, INC., a Delaware corporation, STOLTZ REALTY CO., INC., a Delaware corporation, STOLTZ MANAGEMENT CO., INC., a Delaware corporation, DIAMOND McCUNE, INC., a Delaware corporation, and WILLARD J. ORR, Defendants.

CIVIL ACTION NUMBER 90C-10-269

SUPERIOR COURT OF DELAWARE, NEW CASTLE

**1992 Del. Super. LEXIS 343**

April 22, 1992, Submitted
August 26, 1992, Decided

**DISPOSITION:** [*1]

Upon Motion of Defendants Diamond McCune, Inc. and Willard J. Orr for Summary Judgment - DENIED

**COUNSEL:** Jeffrey S. Goddess, Esq., Rosenthal, Monhait, Gross & Goddess, P.A. attorney for plaintiff.

Paul Cottrell, Esq., of Berg, Tighe & Cottrell, P.A., attorney for defendant Diamond McCune, Inc. and Willard J. Orr.

**JUDGES:** HERLIHY

**OPINION BY:** JEROME O. HERLIHY

**OPINION:** *MEMORANDUM OPINION*

HERLIHY, Judge

The matter before the Court is a motion for summary judgment by defendants Diamond McCune, Inc. and Willard J. Orr [engineers] against plaintiff Council of the Dorset Condominium Apartments [Council].

The Council has filed a negligence action against engineers seeking compensatory damages. n1 Engineers' motion claims that the Council's action is for economic loss and that the Council is not entitled to recover in negligence.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - - -

n1 The other parties in this suit are not involved in this motion for summary judgment.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

*FACTS*

In May 1983, engineers were asked by defendant Dorset Apartments [Apartments], a partnership, to prepare an engineering report [*2] for Apartments on the condition of the building prior to purchase. The report, mentioning some needed repairs, was completed by engineers. In February 1984, the building was sold to Dorset Apartments, Inc., a Delaware corporation [corporation]. Engineers then expanded their earlier report into a report entitled "Engineer's Report for the Condominium Conversion of 1301 N. Harrison Street" [report]. The opening paragraph of that report states:

INTRODUCTION & OBJECTIVES:

Diamond/McCune * Architects & Engineers was contacted and requested to prepare an engineering report of the Dorset Apartment Building to fulfill the requirements of the Code of the City of Wilmington pertaining to Condominium Conversions. This report is to concern itself with the existing status of the engineering systems based on a visual inspection of the building.

After adding estimated repair prices for structural repairs, remaining useful life and present replacement costs of major mechanical equipment, engineers signed and affixed seals to the report. This report was required under the Wilmington City Code when an apartment building was to be converted into condominiums. n2 Corporation included the report [*3] in a brochure to be given to persons interested in purchasing condominium units from the corporation.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 § 35-63. **Notice of intent to sell; tenants' rights; disclosure.**

(a) Notice of intent to sell.

(2) A report from a professional engineer licensed to do business in the State of Delaware, stating the engineer's observations regarding the condition of the structure involved and the major mechanical components in the building, . . .

*Wilmington City Code* § 35-63.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The report mentioned that there was some cracking in the exterior overhang and estimated that repairs would cost $ 35,000. n3 In getting an estimate for repairs, Council found that the cracks extended into the concrete slabs. There was a possibility that the reinforced steel rods might have been exposed to

external moisture with a likelihood of steel corrosion. The cost of repairs is now estimated in the $ 700,000 range.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 The exterior floor slab overhang is showing evidence of cracking in both the surface and the soffit. These cracks are parallel to the exterior edge and probably are only through the grout coat applied to the concrete or where the edge of the slab was padded out to the proper alignment. These cracks will require sealing in the near future.

Report at 4.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*4]

## STANDARD OF REVIEW

Summary judgment may be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Wilson v. Joma,* Del.Supr., 537 A.2d 187 (1988). The Court must consider the facts stated in a light most favorable to the non-moving party. *Schagrin v. Wilmington Medical Center,* Del.Super., 304 A.2d 61 (1973). Where there is a material fact in dispute, or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of law, summary judgment is inappropriate. *Tew v. Sun Oil Co.,* Del.Supr., 407 A.2d 240 (1979).

The issues before the Court are whether the Council seeks damages which amount to economic loss and, if so, whether engineers may be sued in negligence for such damages.

## DISCUSSION

Engineers argue that the economic loss doctrine bars Council's claim because the damages sought are for damage to the building itself not caused by explosion, accident or other calamity.

Council counters that because the report was prepared to supply information for the guidance of others in a [*5] business transaction, the negligent misrepresentation exception to the economic loss doctrine should be applied. Engineers contend their conduct does not fall within the exception.

Under Delaware tort law, the economic loss doctrine completely bars recovery of economic loss caused by qualitatively defective products. "Economic loss has been defined as 'damages for inadequate value, cost of repair and replacement of the defective product or consequent loss of profits without any claim of personal injury or damage to other property'". *Danforth v. Acorn Structures, Inc.,* Del.Supr., 608 A.2d 1194 n.3 (1992), quoting *Moorman Mfg. Co. v. National Tank Co.,* Ill.Supr., 91 Ill. 2d 69, 435 N.E.2d 443, 449, 61 Ill. Dec. 746 (1982).

In *Guardian Construction Co. v. Tetra Tech Richardson,* Del. Supr., 583 A.2d 1378 (1990), the Court formally adopted as Delaware law *Restatement, Second, Torts* § 552 [§ 552] n4 This section is the exception to the economic loss doctrine.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 Information Negligently Supplied for the Guidance of Others

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

*Restatement, Second, Torts* § 552.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*6]

Council is asking for costs of investigation and repair of the building, as well as costs and appropriate prejudgment and post-judgment interest. This is solely economic loss to Council. Thus, as a starting point, the economic loss doctrine is applicable.

This Court has clarified several ambiguities in § 522 and *Guardian's* adoption of it. In *Danforth v. Acorn Structures, Inc.,* Del.Super., C.A.No. 90 C-JN-30, 1991 Del. Super. LEXIS 454, Herlihy, J. (November 22, 1991) (a decision on reargument), this Court held that liability for negligently supplying information required two elements. The first is that the information supplied must be supplied to others in their business relations with third parties. *Id.* at *4. The second element is that the defendant must be in the business of supplying information. *Id.* at *7. n5

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -



n5 The Supreme Court affirmed this Court's first ruling in Danforth. It expressly did not reach this Court's decision cited in this paragraph. Danforth, supra,    A.2d   , slip op. at n.3.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The record at this [*7] stage shows that engineers had helped supply information to other defendants in this case involving an earlier, separate condominium conversion in Wilmington. Viewing the evidence most favorably to Council, the record also shows engineers supplied information to these defendants for this conversion aware of its potential use. The record shows that the purchasers, and potential purchasers, of various condominium units received this information from the corporation. They relied upon it in their decision-making.

Therefore, based on the record at this point, this Court concludes that engineers come within the exception to the general rule of the economic loss doctrine. At least there is a genuine issue of material fact as to that exception making summary judgment in favor of engineers impossible.

Engineers point to a number of cases from Illinois which this Court reviewed in the above-cited *Danforth* decision. In short, engineers argue that, as an architect and/or engineer, they would not fall within the exception under Illinois law and adopted in *Danforth*. This Court has reviewed those Illinois cases in connection with this case and finds them distinguishable.

Unlike an architect [*8] who prepares plans which are converted into a tangible product - a building, engineers prepared information to be used as information. Admittedly, the line can be fine but engineers' business has dual purposes, one of which may shield them from liability, the other of which may expose them to liability. This is no indication that the shield acts as a complete bar to all types of transactions.

There remains also genuine issues of material fact whether engineers' report was false and whether they were negligent in their inspection and reporting.

*CONCLUSION*

Since there is a genuine issue of material fact about engineers' status, this Court cannot, as a matter of law, dismiss them as a party. Accordingly, the motion of Diamond McCune, Inc. and Willard J. Orr for summary judgment is **DENIED.**

**IT IS SO ORDERED.**

Jerome O. Herlihy

# LAW OFFICES OF JAMES F. BAILEY

ATTORNEYS AT LAW
THREE MILL ROAD, SUITE 306Am
WILMINGTON, DELAWARE 19806

**JAMES F. BAILEY, JR.**

(302) 658-5686
TELEFAX: (302) 658-8051
E-Mail: jbailey@jfbailey.com

November 17, 2006

*Via Electronic Filing*
The Honorable Gregory M. Sleet
United States District Court
Lock Box 18
844 North King Street, Room 4209
Wilmington, DE 19801

> RE:    **Delaware Art Museum v. Ann Beha, et al.**
>        **C.A. No. 06-481**
>        **Our File No.: 6408**

Dear Judge Sleet:

Enclosed please find a courtesy copy of the attached **Defendant Ove Arup & Partners Massachusetts, Inc.'s Reply Memorandum of Law in Support of Its Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)** in the above referenced case.

Respectfully submitted,

LAW OFFICES OF JAMES F. BAILEY

JAMES F. BAILEY, JR.

JFB/jlt
Enclosure

cc:    Dr. Peter T. Dalleo, Clerk of the Court (via U.S. Mail)
       Service List (via Electronic Filing)